UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ASHLEY BIBB,

            Plaintiff,

v.

COMMISSIONER OF
SOCIAL SECURITY,

            Defendant.
_____/

Case No. No. 19-13428

District Judge Stephen J. Murphy, III

Magistrate Judge R. Steven Whalen

**REPORT AND RECOMMENDATION**

Plaintiff Ashley Bibb brings this action under 42 U.S.C. §405(g), challenging a final decision of Defendant Commissioner denying her application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act. The parties have filed cross-motions for summary judgment which have been referred for a Report and Recommendation pursuant to 28 U.S.C. §636(b)(1)(B). For the reasons set forth below, I recommend that Defendant's Motion for Summary Judgment [ECF No. 14] be GRANTED and that Plaintiff's Motion for Summary Judgment [ECF No. 10] be DENIED.

## I.  PROCEDURAL HISTORY

On May 16, 2017, Plaintiff filed applications for DIB and SSI, alleging disability as of March 1, 2015.  ECF No. 8-6, PageID.206 (Tr.16, 177).  Upon initial denial of the claim, Plaintiff requested an administrative hearing, held on September 18, 2018 in Detroit, Michigan (Tr. 33).  Administrative Law Judge ("ALJ") Elias Xenos presided.  Plaintiff, represented by attorney Justen Grech, testified (Tr. 38-52), as did Vocational Expert ("VE") Harry Cynowa (Tr.  52-56).  On December 20, 2018, ALJ Xenos determined that Plaintiff was not disabled (Tr. 16-28).

On September 24, 2019, the Appeals Council declined to review the ALJ's decision (Tr. 2-4).   Plaintiff filed suit in this Court on November 20, 2019.

## II.  BACKGROUND FACTS

Plaintiff, born May 14, 1991, was 27 at the time of the  administrative decision (Tr. 28, 177).  She completed high school and worked previously as a hair stylist, housekeeper, security worker, and shelf stocker (Tr. 205).   She alleges disability as a result of back problems and a hernia (Tr. 204).

**A. Plaintiff's Testimony**

Plaintiff offered the following testimony before the ALJ:

She had been living with her brother for the past month (Tr. 38).  She was the primary caregiver of her six-year-old child but her fiancé visited every day (Tr. 39-40).  She worked as a security guard until two years before the hearing (Tr. 40).  She acknowledged that her

earnings record included work as an independent contractor but testified that the earnings were falsely attributed to her (Tr. 42). She did not file an income tax return for 2017 (Tr. 42). Prior to the security guard work, she worked at Marshalls (Tr. 44). At the time of the hearing, she supported herself by styling hair (Tr. 44). In 2017, she did not make more than $1,000 from styling hair (Tr. 44). Her greatest yearly income from hair styling was $3,000 (Tr. 46). She had been styling hair for the past five years but had slowed down recently due to physical problems (Tr. 45).

In response to questioning by her attorney, Plaintiff reported that back pain prevented her from working full time (Tr. 47). She reported that her back "locked up" after sitting for ten minutes or standing for five (Tr. 47). She reclined nine to ten waking hours every day (Tr. 47). She experienced the medication side effect of drowsiness (Tr. 47). She was able to prepare meals for her son but was required to rest between activities (Tr. 48). She did laundry with the help of her fiancé (Tr. 48). She was unable to lift more than five pounds (Tr. 48). She experienced difficulty bending, twisting, pushing, and pulling (Tr. 48). She was unable to walk more than two minutes before requiring a rest (Tr. 48). She wore a back brace constantly (Tr. 49). She stood 5' 6" and weighed 300 pounds (Tr. 49). She had a bad memory (Tr. 49). She experienced hernia pain and tightness after sitting for long periods (Tr. 49). Plaintiff was able to drive (Tr. 49). She did not read well but had a smart phone (Tr. 50-51). She was not good at math but could perform simple calculations (Tr. 51-52).

**B. Medical Records**

**1. Records Related to Plaintiff's Education and Treatment**[1]

June, 2002 intelligence testing put Plaintiff's performance IQ at 59; verbal, 74; and full scale, 64 (Tr. 270, 272). An accompanying psychologist's analysis noted that "the full scale IQ [was] not the best estimate of her abilities and the verbal IQ should be utilized" in assessing her functioning level (Tr. 274). October, 2009 Individualized Education Program ("IEP") records by Van Dyke Public Schools show that due to a Specific Learning Disability, Plaintiff was eligible for individualized instruction in mathematics, written expression, reading comprehension, and basic reading skills (Tr. 251). Plaintiff was deemed "mature for her age" and "doing fine in . . . academic classes except government" (Tr. 252). She reported that she wanted to change from a computer class to choir in the next semester (Tr. 252). She was advised to "focus on a future career" (Tr. 252). Her reading and math skills were placed at the fifth grade level (Tr. 252-253). She was noted to have "many skills because she ha[d] chores at home" (Tr. 253). Her progress in reading comprehension and mathematics were deemed "sufficient" (Tr. 260-261).

October, 2015 medical treating records note full orientation with normal memory, mood, and affect (Tr. 282). October, 2016 records note full orientation (Tr. 481). She did not exhibit psychiatric or behavioral abnormalities (Tr. 476). September, 2017 imaging

---

[1] Records pertaining to Plaintiff's condition prior to the alleged onset of disability date of March 1, 2015 are included where relevant to the disability claim.

studies of the lumbar spine were unremarkable (Tr. 489). July, 2019 records note the condition of lumbar radiculopathy (Tr. 486).

## 2. Non-Treating Records

In February, 2016, Moises Alviar performed a consultative examination on behalf of the SSA, noting Plaintiff's report of a ventral hernia repair three months earlier with continued abdominal pain (Tr. 375). Plaintiff also reported chronic back pain since receiving spinal anesthesia during delivery (Tr. 375). On a scale of one to ten, she rated her back pain a "six" with medication and "nine" without (Tr. 375). She alleged problems sitting and standing for long periods (Tr. 375). Plaintiff stood 5' 7" and weighed 325 pounds (Tr. 376). Dr. Alviar noted a slow "waddling" gait and the ability to partially stoop and squat (Tr. 376). Plaintiff was "alert, oriented and cooperative" (Tr. 376). Imaging studies of the lumbar spine were unremarkable (Tr. 378).

A September, 2017 consultative examination report by Julia Czarnecki, M.A. and Mitchell Solomon, Ph.D. showed *Wechsler Adult Intelligence Scale, Fourth Edition* ("*WAIS-IV*") results of a verbal IQ of 76; perceptual reasoning 75; working memory, 74; processing speed, 74; and full scale, 70 (Tr. 428). Dr. Solomon found as follows:

> While the patient does have some limited reading and arithmetic skills, both of which are at about an upper third-mid grade level, she is functioning in a generally borderline range of intelligence, which is consistent with her daily functioning skills as well. It is this examiner's opinion, there would be no marked limitations in the areas of working memory, concentration or attention that would prevent her from engaging in routine work related activities of following two or three step directions (Tr. 428).

He diagnosed Plaintiff with specific learning disability and borderline intellectual functioning (Tr. 428). He found that Plaintiff could manage her own benefit funds (Tr. 428).

The same month, Cynthia Shelby-Lane, M.D. performed a consultative physical examination, noting Plaintiff's report of back pain aggravated by standing, sitting, lifting, bending, and walking for long periods (Tr. 431). Plaintiff reported that the back pain began after a 2014 car accident (Tr. 431). Dr. Shelby-Lane noted that Plaintiff was currently taking pain medication but had participated in physical therapy on only one occasion (Tr. 431). Plaintiff reported pain from an umbilical hernia but did not want additional surgery (Tr. 433).

In October, 2017, Colin King, Ph.D. performed a non-examining review of the treating and consultative evidence on behalf of the SSA, noting limited reading and arithmetic skills but "no marked limitations in concentration or attention preventing "routine work related activities or following two or three step directions" (Tr. 62, 67, 70). He found moderate limitation in the ability to understand, remember, or apply information; mild limitation in interacting with others; moderate limitation in concentration, persistence, or pace; and mild limitation in adapting or managing oneself (Tr. 67).

### C. Vocational Testimony

VE classified Plaintiff's past work as a hair braider as skilled and exertionally light (sedentary as actually performed)[2] (Tr. 53). ALJ Xenos then posed the following set of

---

[2] 20 C.F.R. § 404.1567(a-d) defines *sedentary* work as "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools; *light* work as "lifting no more than 20 pounds at a time with frequent lifting or

limitations to the VE, describing a hypothetical individual of Plaintiff's age, educational level, and work history:

> [L]ight work activities . . . with the following limitations. Frequently climbing ramps; occasionally climbing stairs; never climbing ladders, ropes, or scaffolds; occasionally balancing, stooping, crouching, crawling, and kneeling; may never work around unprotected heights or hazardous machinery. Due to a combination of severe mental deficits, the symptoms from physical deficits, work is limited to simple, routine tasks in a work environment free of fast paced production requirements involving only simple work-related decisions with few, if any, work place changes. Limited to occupations that do not require complex written or verbal communication or complex mathematical calculations. Due to the foregoing deficits, this individual would be off task 10% of a work day, over and above normally scheduled breaks (Tr. 53-54).

The VE testified that the above limitations precluded Plaintiff's past relevant work but would allow for the unskilled, exertionally light work of a hand packager (35,000 positions in the national economy); small products assembler (35,000); and visual inspector checker (35,000) (Tr. 54). He stated that his testimony was based on the information found in the *Dictionary of Occupational Titles* ("*DOT*") and his own professional experience (Tr. 53-55). He testified that the need to alternate between sitting and standing every 15 minutes would not change the job numbers (Tr. 54-55). He stated if the individual were limited to sedentary work, the same non-exertional limitations (listed above) would allow for the jobs

---

carrying of objects weighing up to 10 pounds;" *medium* work as "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds;" and that exertionally *heavy* work "involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds. *Very Heavy* work requires "lifting objects weighing more than 100 pounds at a time with frequent lifting or carrying of objects weighing 50 pounds or more. § 404.1567(e).

of bench hand (40,000); final assembler (40,000); and sorter (35,000) (Tr. 55). He testified that if the individual were off task 20 percent or more of the workday, all competitive work would be eliminated (Tr. 55). In response to questioning by Plaintiff's attorney, the VE testified that the need to be absent more than one day a month would be work preclusive (Tr. 56). He testified that a limitation to five-pound lifting would allow for all of the sedentary jobs listed above (Tr. 56).

### D. The ALJ's Determination

Citing the medical transcript, ALJ Xenos found that Plaintiff experienced the severe impairments of "obesity, lumbar stenosis with radiculopathy and disc prolapse, history of mentral hernia and status post surgical repair; and specific learning disability/borderline intellectual function" but that none of the conditions met or equaled a listed impairment found in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 19). He found moderate limitation in understanding, remembering, or applying information; mild limitation in interacting with others; moderate limitation in concentration, persistence, or pace; and a marked limitation in adapting or managing oneself (Tr. 118-119).

ALJ Xenos determined that Plaintiff had the Residual Functional Capacity ("RFC") for light work with the following additional restrictions:

> Frequently climbing ramps; occasionally climbing stairs; never climbing ladders, ropes, or scaffolds; occasionally balancing, stooping, crouching crawling, and kneeling; may never work around unprotected heights or hazardous machinery; due to a combination of severe mental deficits and symptoms from physical deficits, work limited to simple, routine tasks; in a work environment free of fast-paced production requirements; involving only

> simple, work-related decision; with few, if any, work-place changes; limited to occupations that do not require complex written or verbal communication or complex mathematical calculations; due to foregoing deficits this individual would be off-task 10 % of the workday over and above normally scheduled breaks (Tr. 21-22).

Citing the VE's testimony (Tr. 54-55), the ALJ determined that Plaintiff was unable to perform any of her past relevant work but could work as an inspector and hand packager, small product assembler, and checker (Tr. 27).

The ALJ acknowledged the diagnosis of intellectual and learning disorders (Tr. 24). He noted that September, 2017 IQ testing showed a full-scale IQ of 70; verbal comprehension, 76; perceptual reasoning, 75; and working memory index, 74 (Tr. 25). He cited the consultative examiner's conclusion that Plaintiff did not have disabling memory, concentration, or attention limitations preventing a range of unskilled work (Tr. 26). He also cited Dr. King's non-examining finding that Plaintiff was capable of independent, routine, and simple work activity (Tr. 26). The ALJ found that Plaintiff's daily activities, including childcare, light chores, shopping, and meal preparation also supported the non-disability finding (Tr. 25).

### III.  STANDARD OF REVIEW

"Under the substantial evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Biestek v. Berryhill*, — U.S. —, 139 S.Ct. 1148, 1154 (2019)(punctuation altered)(*citing Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed.

126 (1938))(emphasis deleted). The district court reviews the final decision of the Commissioner to determine whether it is supported by substantial evidence. *Biestek* at 139 S. Ct. at1152; 42 U.S.C. §405(g). "Substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers v. Comm'r. of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)(*citing Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir.1994)).

The standard of review is deferential and "presupposes that there is a 'zone of choice' within which decision makers can go either way, without interference from the courts." *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986)(*en banc*). Where substantial evidence supports the ALJ's decision, the reviewing court "defers to that finding even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r. of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009)(*citing Key v. Callahan*, 109 F.3d 270, 273 (6th Cir.1997)). However, in determining whether the evidence is substantial, the court must "take into account whatever in the record fairly detracts from its weight." *Wages v. Secretary of Health & Human Services*, 755 F.2d 495, 497 (6th Cir. 1985). The court must examine the administrative record as a whole, and may look to any evidence in the record, regardless of whether it has been cited by the ALJ. *Walker v. Secretary of Health and Human Services*, 884 F.2d 241, 245 (6th Cir. 1989).

## IV.  FRAMEWORK FOR DISABILITY DETERMINATIONS

Disability is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). In evaluating whether a claimant is disabled, the Commissioner is to consider, in sequence, whether the claimant: 1) worked during the alleged period of disability; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of an impairment listed in the regulations; 4) can return to past relevant work; and 5) if not, whether he or she can perform other work in the national economy.  20 C.F.R. §416.920(a).  The Plaintiff has the burden of proof at steps one through four, but the burden shifts to the Commissioner at step five to demonstrate that, "notwithstanding the claimant's impairment, he retains the residual functional capacity to perform specific jobs existing in the national economy." *Her v. Comm'r of Soc. Sec.,* 203 F.3d 388, 391–92 (6th Cir. 1999).

## V.  ANALYSIS

Plaintiff argues that the RFC for a range of unskilled work failed to account for her "objectively established communication deficits." *Plaintiff's Brief,* ECF No. 10, PageID.537 (*citing* Tr. 21-22).  She contends that the RFC's preclusion on "'complex'" communication does not reflect her documented inability to "read, write, and spell" beyond the third grade level.  *Id.* at 538 (*quoting* Tr. 21-22).  Plaintiff argues in addition that the ALJ failed to provide

adequate reasons for declining to include her cognitive impairments in the RFC. *Id.* at 537.

An RFC describes an individual's residual abilities. *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002). The "RFC is to be an 'assessment of [a claimant's] remaining capacity for work' once [his] limitations have been taken into account" *Id.* (*quoting* 20 C.F.R. § 416.945). In determining a claimant's RFC, it is necessary to consider (1) objective medical evidence as well as (2) subjective evidence of pain or disability. §§ 404.1545(a)(1); 416.945 (RFC must be based on all "relevant evidence"). The ALJ must consider the alleged physical, mental, and environmental restrictions in crafting the RFC. §§ 404.1545(b-d); 416.945; SSR 96-8p, 1996 WL 374184, at *6 (June 2, 1996). An ALJ is permitted to draw from the record as a whole in crafting the RFC. *Rudd v. Comm'r of Soc. Sec.*, 531 F. App'x 719, 727-728 (6th Cir. September 5, 2013)(rejecting contention ALJ was "bound" by one medical opinion - ALJ "properly based her RFC determination on *all* the evidence of record")(emphasis added); SSR 96-8p at *2.

At Step Two of the administrative analysis, the ALJ acknowledged that the impairment of "specific learning disability/borderline intellectual function" created more than minimal work-related limitations (Tr. 19). In recognition of the cognitive impairment(s), the RFC included the following limitations:

> [D]ue to a combination of severe mental deficit and symptoms from physical deficits, work limited to simple, routine tasks; in a work environment free of fast-paced production requirements; involving only simple, work-related decision; with few, if any, work-place changes; limited to occupations that do not require complex written or verbal communication or complex mathematical calculations; due to foregoing deficits this individual would be

>off-task 10 % of the workday over and above normally scheduled breaks (Tr. 21-22).

In support of his finding that the limitations were not disabling, the ALJ noted that Plaintiff did not require mental health treatment of assistance during the relevant period (Tr. 25). He cited Dr. Solomon's finding that Plaintiff could read at the third-grade level but that the limitations would not prevent "'routine'" work requiring "'two or three step directions'" (Tr. 25-26 *citing* 428). He noted that Plaintiff's regular activities of childcare, light chores, shopping, and meal preparation stood at odds with the finding that she lacked the cognitive skills for a range of unskilled work (Tr. 25).

The ALJ's findings are consistent with my own review of the records. Plaintiff reported poor reading skills but admitted that she used a smart phone (Tr. 50-51). Her ability to pass a driver's exam and continue to drive suggests at least rudimentary reading skills (Tr. 49). High school records show that her reading comprehension and mathematic skills were deemed "sufficient" to graduate from high school (Tr. 260-261). Examinations and testing records by psychologist Czarnecki and Dr. Solomon state that Plaintiff was capable of handling her benefit funds (Tr. 428).

Plaintiff's discrete argument that her third-grade reading skills as found by Dr. Solomon (Tr. 428) were not captured by the RFC limiting her to jobs "that do not require complex written or verbal communication or complex mathematical calculations" actually appears to center on the VE's job findings rather than whether the RFC was supported by the record or sufficiently articulated. ECF No. 10, PageID. 541,  Namely, Plaintiff contends that because

the the above-stated modifiers- no "complex written or verbal communication or complex mathematical calculations"- as posed in the hypothetical question to the VE did not convey her full degree of cognitive limitation (Tr. 53-54) and as a result, the VE's corresponding job testimony did not constitute substantial evidence (Tr. 54).[3]

Plaintiff is correct that job testimony given in response to inadequate hypothetical modifiers does not constitute substantial evidence. *See Ealy v. Commissioner of Social Sec.*, 594 F.3d 504, 516 (6th Cir. 2010)(job testimony given in response to a hypothetical question that does not account for the claimant's limitations cannot be used to support a Step Five non-disability finding); *see also Teverbaugh v. Commissioner of Social Sec.*, 258 F.Supp.2d 702, 706 (E.D. Mich. 2003)(Roberts, J)(reversible error for ALJ to rely upon unsupported job findings).

Citing the VE's job testimony (Tr. 54), Plaintiff notes that the job of inspector/hand packager and checker both require "language level two" skills, which include the ability to read comic books, read instructions for assembling model cars, and write compound sentences using adjectives and adverbs. ECF No. 10, PageID.541; DOT Code 559.687-074; 222.687-010. Plaintiff contends further that she does not have even language level 1 skills for the job of

---

[3] The testimony that Plaintiff could perform a significant number of jobs requiring only level one (equaling third grade) language skills is dispositive of her Step Five argument. As such, I decline to consider whether the discrete modifiers of no "complex written or verbal communication or complex mathematical calculations" are sufficient to capture third grade skills. Likewise, I decline to consider Defendant's contention that because the VE's job testimony was not challenged at the hearing, the "language skill" argument is waived.

small products inspector which requires recognizing at least 2,500 two or three-syllable words; "comparing similarities and differences" between words; and printing simple sentences, numbers, names, and addresses. *Id.*; DOT Code 706.684-022.

Plaintiff makes a cogent argument based on Dr. Solomon's findings that her third-grade reading skills prevent her from performing the "level two" skills for the jobs of inspector/hand packager and checker. Case law from this circuit and elsewhere indicates "language level of one under the [*DOT*] would be at the third grade level" and level two, "sixth grade level." *Langrel v Astrue*, 2011 WL 3793792, at *5 (E.D. Tenn. August 19, 2011), report and recommendation adopted 2011 WL 3794035 (E.D. Tenn. August 25, 2011); *Tavales v Colvin*, 2017 WL 1499248, at *4 (E.D. Pa. February 27, 2017), report and recommendation adopted, 2017 WL 1477351 (E.D. Pa. April 25, 2017)(level one equates with first through third-grade language skills); *Dschaak v Colvin*, 2015 WL 181803, at *6 (D. Or. January 14, 2015)("Language Development Level 1 is not inconsistent with a third grade spelling and writing level")(*citing McInnis v. Astrue*, 2010 WL 596386, at *6 (C.D.Cal. February 16, 2010)).

However, the same case law undermines Plaintiff's claim that she is incapable of jobs requiring level one language skills. Assuming that Plaintiff is unable to perform the level two language skills required for the jobs of inspector/hand packager and checker, her third-grade language skills as found by Dr. Solomon would allow for the job of small products assembler requiring only "level one" language skills. *See Langrel* at *5. The VE's finding that Plaintiff

could perform 35,000 small products assembler jobs in the national economy, by any measure, constitutes a "significant number" for purposes of the Step Five determination (Tr. 35). *See Taskila v. Commissioner of Social Sec.,* 819 F.3d 902, 905 (6th Cir. 2016)("Six thousand jobs in the United States fits comfortably within what this court and others have deemed 'significant'"). Assuming at worst that the job testimony that Plaintiff could perform jobs requiring "level two" language skills was made in error, a significant number of "level one" jobs constitute substantial evidence in support of the Step Five findings.

Further, Plaintiff's argument is premised on the erroneous contention that Dr. Solomon's findings alone are to be given controlling weight. However, the record contains other evidence supporting the finding that Plaintiff possessed at least third grade cognitive and language skills. Her consultative examiners found that she could handle her own benefit funds (Tr. 428); her ongoing part-time work as a braider was classified as "skilled" work (Tr. 53); and she possessed the language skills to graduate from high school (Tr. 251-252, 260-261). In contrast to Dr. Solomon's findings, the academic records show that her reading and mathmatical skills were placed at the fifth grade level (Tr. 251-252). The conclusion that Plaintiff can perform a limited range of unskilled work is adequately supported by the record.

Because the ALJ's decision is comfortably within the "zone of choice" accorded to the fact-finder at the administrative hearing level, it should not be disturbed by this Court. *Mullen v. Bowen, supra*.

## VI.   CONCLUSION

For these reasons, I recommend that Defendant's Motion for Summary Judgment [ECF No. 19] be GRANTED and that Plaintiff's Motion for Summary Judgment [ECF No. 14] be DENIED.

Any objections to this Report and Recommendation must be filed within 14 days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987).

Any objections must be labeled as "Objection #1," "Objection #2," etc., and any objection must recite *precisely* the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party must file a concise response proportionate to the objections in length and complexity. The response must specifically address each issue raised in the objections, in the same order and labeled as "Response to Objection #1," "Response to Objection #2," *etc.*

Date: November 30, 2020				Steven Whalen
						R. Steven Whalen
						United States Magistrate Judge

### CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was sent to parties of record on November 30, 2020 electronically and/or by U.S. mail.

						s/Carolyn M. Ciesla
						Case Manager